OPINION
Appellant Deshone Higgenbottom appeals from the September 13, 1999, Judgment Entry of the Stark County Common Pleas Court, Juvenile Division, permanently terminating his parental rights and granting permanent custody to the Stark County Department of Human Services for purposes of adoptive placement.
 STATEMENT OF THE FACTS AND CASE
Deshone Denny was born on December 18, 1996. Appellant Deshone Higgenbottom is her father [hereinafter Higgenbottom]. The Stark County Department of Human Services [hereinafter SCDHS] had been working with Deshone's mother in regards to her other three children for approximately a year. SCDHS' concerns with the mother included mother's lack of housing, her alcoholism, her involvement in violent relationships and her poor parenting skills. On May 23, 1997, the SCDHS filed a complaint in regards to the child. The complaint alleged that the child was a neglected child due to the mother's lack of housing and inappropriate care of the child. The SCDHS was granted temporary custody of the child at an emergency shelter hearing held May 27, 1997. An adjudicatory hearing was held on June 23, 1997. The trial court found the child to be neglected. Neither parent appeared at the hearing. A dispositional hearing was held the same day, June 23, 1997, and temporary custody was awarded to the SCDHS. A case plan, which included parenting and substance abuse treatment for the mother and establishment of paternity for Higgenbottom was adopted. On October 23, 1997, the case plan was amended to include housing and Choices for anger management for Higgenbottom. A semi-annual review was held on November 19, 1997, at which time the case plan was adopted as amended and filed. Subsequently, the case plan was amended for Higgenbottom so as to include Goodwill Parenting Classes. On March 23, 1998, the SCDHS filed a motion to Extend Custody. At that time, Higgenbottom had been incarcerated for domestic violence and had not started his case plan services yet. The trial court granted that extension on April 23, 1998. SCDHS filed a second Motion to Extend Custody on October 14, 1998. Higgenbottom had not complied with his case plan but had recently begun services. On October 23, 1998, SCDHS' temporary custody of Deshone was extended to May 23, 1999. SCDHS was ordered to evaluate Higgenbottom's relatives for placement of Deshone Denny. On March 19, 1999, the SCDHS filed a Motion for Permanent Custody of Deshone Denny. The motion was based upon the mother and Higgenbottom's failure to complete their case plan resulting in Deshone Denny remaining in the SCDHS' custody for 22 months. The Motion for Permanent Custody was set for May 11, 1999, but was continued to May 25, 1999, due to the fact that Wayne Leach, Higgenbottom's anger management counselor, was unable to be present due to the sudden death of his mother. The continuance was, in part, also due to the fact that Higgenbottom's counsel at the time, Lisa LaGuardia, had accepted a job with SCDHS and was to begin employment on May 17, 1999. The permanent custody hearing took place on May 25, 1999, and June 8, 1999. Higgenbottom's newly appointed counsel requested a continuance of the June 8, 1999, hearing due to Higgenbottom's inability to appear so that counsel could have the benefit of his client's help. Higgenbottom's new counsel had been appointed on May 20, 1999. The motion was denied and the hearing proceeded on June 8, 1999, without Higgenbottom's appearance. Higgenbottom submitted a written statement to the trial court in lieu of his appearance. The following facts were adduced at the hearings: Janice Fein, Higgenbottom's SCDHS social worker, testified that Higgenbottom's case plan with the agency required Higgenbottom to attend Choices for anger management counseling, the Goodwill Parenting program and obtain and maintain housing. Fein testified that the anger management counseling was included due to Higgenbottom's three domestic violence charges, his having been in jail for domestic violence and a history of violence within his biological family. Testimony demonstrated Higgenbottom's domestic violence problems. The record reflects that Higgenbottom was criminally charged for violent conduct recently. While the record does not reflect a conviction, Higgenbottom's sister has alleged that Higgenbottom punched her in the neck and chest, resulting in criminal charges. Elsa Scharl, who was pregnant at the time of the hearing, testified that she believed that Higgenbottom was the father of her unborn child. Scharl testified that Higgenbottom had threatened to push her down the stairs and cause her to have a miscarriage. Additionally, Scharl testified that Higgenbottom had barged into her home unexpectantly and that he continued to harass her with phone calls. Higgenbottom admitted that he had been incarcerated for domestic violence committed against a girlfriend. A civil protection order existed between Higgenbottom and the girlfriend. While Higgenbottom had originally been placed on probation for that offense, his probation was subsequently revoked. Testimony showed that Higgenbottom had begun the Choices program for anger management. Higgenbottom testified that he was originally terminated from the program when his probation was revoked and he was incarcerated. After spending six months in jail for domestic violence, Higgenbottom returned to Choices the day he got out of jail, but could attend only fifteen minutes of the hour and a half meeting because he had a boxing match. Subsequently, Higgenbottom was terminated for absences. Higgenbottom claimed, however, that he attended an alternative anger management class in Akron. However, Higgenbottom claimed that he did not tell Fein (his SCDHS social worker) about his attendance at this program due to their "bad" relationship. The Akron program was a 12 week program while Choices was significantly longer. Wayne Leach, the counselor at the Akron program, verified Higgenbottom's completion of the program but stated that if Higgenbottom had a pending domestic violence charge, he would have concerns about Higgenbottom's ability to put what he learned into practice. Fein testified that Higgenbottom had been verbally abusive towards her and that Higgenbottom had left several harassing phone messages on her answering machine at her home and threatened to drive by her home. Fein testified that this concerned her because she had not given Higgenbottom her home phone number nor address. Higgenbottom acknowledged that he had called Fein at her home, but denied that the phone calls were threatening. Judy Gaetje, the Goodwill Parenting Instructor, testified that she and Higgenbottom discussed his domestic violence history. Higgenbottom stated that it was not really anything he did but rather that he had been provoked. Gaetje testified that Higgenbottom blamed the other party and took no responsibility for his part in the incidents. Additionally, Higgenbottom showed little remorse regarding the incidents. Higgenbottom testified that he has two other children, in addition to Deshone. Higgenbottom stated that he had paid child support for those two children until he switched jobs, but has never paid child support for Deshone. Desiree Kindy, a social service aide with SCDHS testified that Deshone Denny always cried when she was taken from the foster home to go to the visits with Higgenbottom and when she saw Higgenbottom. Kindy testified that Deshone Denny would just sit with her head down during visits with Higgenbottom and that there was not a lot of interaction between Higgenbottom and Deshone. Higgenbottom admitted that sometimes Deshone cried when he visited her and probably did not know him. Higgenbottom claimed that he attended and completed the Goodwill Parenting Classes. Testimony confirmed that Higgenbottom completed the program but that Higgenbottom received a Certificate of Participation only. Such a certificate is awarded to persons who attend and communicate somewhat but indicate that the attendee was not terribly open or honest. Higgenbottom's participation was described as fairly passive, and he rarely participated without prompting. Higgenbottom had three excused and three unexcused absences and started a day late. Higgenbottom was tardy 11 times. Higgenbottom's case plan also called for Higgenbottom to obtain and maintain housing for he and Deshone. On May 25, 1999, Higgenbottom testified that he currently resided with his mother in Akron, Ohio, although he further testified that he had rented a two-bedroom apartment in Biloxi, Mississippi. He rented the Biloxi apartment with his fiancé, Kara Hossler. In regard to Higgenbottom's home in Biloxi, Fein testified that Higgenbottom had not been cooperative and refused to provide his home and work address to Fein. While Higgenbottom claimed that he had informed Fein of the home as soon as he obtained it, he acknowledged that he had just provided Fein with the address within the last month before the hearing. As such, Fein had not been able to conduct a homestudy of appellant's home in Biloxi prior to the hearing. Judy Gaetje, the Goodwill Parenting Instructor, testified that she had received concerns that Higgenbottom was living in different places during the classes. This was supported by the testimony. Higgenbottom testified that, for a time, he had lived with his girlfriend, Juana Wilcox. This arrangement ended when Higgenbottom was incarcerated for domestic violence in November, 1997. Colleen Miller, Goodwill Parenting Skills Training Supervisor, testified that Higgenbottom told her that he was living with his other two children during the period of the Goodwill Parenting Classes. A best interests hearing was scheduled for July 7, 1999. However, Higgenbottom's counsel requested a continuance based upon counsel's schedule and the continuance was granted. Thus, the best interests hearing was held August 17, 1999. The following facts were adduced at the hearing: Fein testified that Deshone Denny was a 2 year old child, with no physical, mental or emotional problems. Deshone has been placed in a foster home and had been there since the age of five months. The foster family was interested in adopting Deshone. Deshone had not seen her mother since April, 1998, and, at the time of the hearing, Higgenbottom had not visited Deshone since April 22, 1999. While Higgenbottom had the opportunity to visit since that date, he had not taken advantage of the opportunities. Fein testified that homestudies had been done on various relatives of Deshone Denny, but the relatives were unsuitable based upon information supplied by the Summit County Children Protective Services. On September 13, 1999, the trial court granted permanent custody of Deshone to SCDHS. It is from the September 13, 1999, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED THE APPELLANT'S MOTION FOR A CONTINUANCE, UNTIL THE APPELLANT COULD BE PRESENT AND TO PERMIT COUNSEL MORE TIME TO FAMILIARIZE HIMSELF WITH THE CASE FOR PREPARATION OF AN ADEQUATE DEFENSE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
ASSIGNMENT OF ERROR II
 A RECORD DOES NOT EXIST TO SUPPORT THE TRIAL COURT'S DECISION TO GRANTED [SIC] STARK COUNTY DEPARTMENT OF HUMAN SERVICES MOTION FOR PERMANENT CUSTODY WHICH TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT.
ASSIGNMENT OF ERROR III
 THE TRIAL COURT COMMITTED ERROR WHEN IT DID NOT MAKE A SPECIFIC DETERMINATION OF THE EVIDENCE AND CONCLUSION OF LAW, AS IT RELATES TO THE REQUIREMENTS OF O.R.C. 2151.414(E) TERMINATING THE PARENTAL RIGHTS OF THE APPELLANT.
ASSIGNMENT OF ERROR IV
 THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED STARK COUNTY DEPARTMENT OF HUMAN SERVICES MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In the first assignment of error, appellant contends that the trial court abused its discretion when it denied appellant's motion for continuance and, in so doing, violated appellant'sfifth and fourteenth amendment of the United States Constitution. We disagree. The grant or denial of a motion to continue a hearing is a matter which is entrusted to the broad discretion of the trial court. See State v. Unger (1981), 67 Ohio St.2d 65,423 N.E.2d 1078. An appellate court will not reverse the denial of a continuance unless there has been an abuse of discretion. Id. An abuse of discretion connotes more than a mere error in law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It implies an arbitrary, unreasonable or unconscionable attitude on the part of the trial court. Id. The permanent custody hearing commenced on May 25, 1999. At the conclusion of the proceedings that day, it was ordered that the hearing be continued to June 8, 1999. Higgenbottom raised no objection or concern regarding that date. Subsequently, on June 7, 1999, Higgenbottom filed a Motion for Continuance. The basis of the written motion was that Higgenbottom was "currently in Biloxi, Mississippi, where he went to pursue a job opportunity, and is currently employed." Higgenbottom's counsel, in an oral argument in favor of a grant of the continuance, made on June 8, 1999, argued that, as counsel, he was at a disadvantage " in terms of familiarity with the case" and had "to kind of learn as we go along without the presence of my client." Transcript of proceedings, June 8, 1999, at page 6. The record reflects that the trial court, on June 7, 1999, had informed Higgenbottom's counsel that the trial court would deny appellant's motion. The record of proceedings on June 8, 1999, reflects that the trial court denied the continuance because: The date to which the hearing would be continued was set at the conclusion of the hearing on May 25, 1999, in the presence of Higgenbottom. Higgenbottom raised no concerns regarding the scheduling at that time. Deshone had been in foster care for an excess of two years and noted that the trial court should consider the best interests of Deshone. Transcript of Proceedings, June 8, 1999, at page 7 — 11. Higgenbottom asserts that the trial court abused its discretion based upon the following: 1. The trial court had previously granted a continuance on May 12, 1999. According to the trial court's Judgment Entry, the matter was continued upon the State's oral motion to continue due to the unavailability of a witness and due to Higgenbottom's counsel having accepted employment with the Stark County Department of Human Services, requiring that substitute counsel be appointed for Higgenbottom. 2. Higgenbottom's trial counsel, Attorney Darrell Holland, was appointed on May 20, 1999, and the permanent custody hearing was conducted on May 25, 1999 and June 8, 1999. We disagree that the trial court abused its discretion. Higgenbottom was aware of the continuation of the hearing to June 8, 1999 when it was scheduled on May 25, 1999. While we agree that Higgenbottom has the right to be present at the permanent custody hearing, the trial court advised Higgenbottom of the date and did not prevent Higgenbottom from being in attendance that day. As to the preparation of Higgenbottom's counsel, we find Higgenbottom did not motion the trial court for a continuance on this basis. Counsel's comments only noted that he could better represent Higgenbottom if Higgenbottom himself were present. We find no abuse of discretion in denying Higgenbottom's motion for a continuance. Likewise, we find that the trial court did not violate Higgenbottom's due process or equal protection rights. We find that Higgenbottom was aware of the hearing date and was free to attend. Higgenbottom's counsel presented four witnesses on June 8, 1999, in Higgenbottom's defense. These witnesses testified that Higgenbottom was an excellent parent with no anger management problems. We find no violation of Higgenbottom's rights under thefifth and fourteenth amendment to the United States Constitution. Appellant's first assignment of error is overruled.
 II
In the second assignment of error, appellant contends that a record does not exist to support the trial court's decision to grant permanent custody of Deshone to the Stark County Department of Human Services. Appellant argues that while the trial court's Judgment Entry indicates that the trial court heard the testimony of Janice Fein, a SCDHS's caseworker, the transcripts reveal that either Fein did not testify or the recording device failed to record her testimony. Appellant argues that he cannot respond to the trial court's "generalized" findings regarding any testimony that may have been given by Fein and, therefore, the trial court's findings are not supported by clear and convincing evidence of specific details relating to the case plan goals and Higgenbottom's deficiencies. Appellant's Merit Brief at page 5. The record reflects that the SCDHS submitted a Motion to Supplement the Transcript on April 4, 2000. Attached to the Motion was the Supplemented Testimony, including a summary of Fein's testimony. The supplemented testimony was approved by Higgenbottom's trial counsel and Higgenbottom's appellate counsel agreed to the supplementation of the Transcript. That Motion was granted and the record has been supplemented to include an agreed statement of Fein's testimony. After the Motion to Supplement was filed, Higgenbottom was given the opportunity to file a response. Upon a review of the record, including the supplement to the transcript, we find the trial court's findings are supported by clear and convincing evidence of the case plan goals and Higgenbottom's failure to meet those goals. Assignment of error II is overruled.
 III
In the third assignment of error, appellant argues that the grant of permanent custody should be reversed because the trial court failed to make specific findings in accordance with R.C.2151.414(E). Appellant contends that the trial court was required to make a specific finding that one or more of the sixteen conditions existed to warrant a grant of permanent custody to the SCDHS. We disagree. R.C. 2151.414(E) states the following, in pertinent part: (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: . . . [the numerous criteria which follow have been omitted]. (Emphasis Added.) The trial court, pursuant to R.C.2151.414(E) was only required to enter a finding that "the child cannot be placed with either parent within a reasonable time or should not be placed with the either parent." The trial court made such a finding in its Judgment Entry: "Deshone Denny cannot be placed with any biological parent at this time or in the foreseeable future; Deshone Denny should not be placed with any biological parent. . . ." We find that the trial court made the specific finding as required by R.C. 2151.414(E). A trial court need not file further, more specific, findings of facts and conclusions of law unless a party requests that the trial court do so. R.C. 2151.414(C). Since no party to the proceedings requested that the trial court make specific findings and conclusions, the trial court was under no obligation to do so. Therefore, we find no prejudicial error.
 IV
In the fourth assignment of error, appellant contends that the trial court committed error when it granted Stark County Department of Human Services' motion for permanent custody and terminated the parental rights of Higgenbottom because the decision is against the manifest weight of the evidence. We disagree. We are not fact finders. We neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. V. Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. A trial court may grant permanent custody of a child to an agency if the trial court determines that the child cannot or should not be placed with one of the child's parents within a reasonable time and determines that the permanent commitment is in the child's best interests. R.C. 2151.414(B). In determining whether a child cannot or should not be placed with either parent, the trial court is to determine if one or more of the criteria listed in R.C.2151.414(E) was proven by clear and convincing evidence. In relevant part, the criteria include the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. . . . (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. . . . R.C. 2151.414(E). In the case sub judice, Janice Fein, Higgenbottom's SCDHS social worker, testified that Higgenbottom's case plan with the agency required Higgenbottom to attend Choices for anger management counseling, the Goodwill Parenting program and obtain and maintain housing. Higgenbottom did not complete the Choices program for anger management counseling but rather was terminated from the program for absences. While Higgenbottom did attend an alternative program, that program was significantly shorter in length. Higgenbottom did not make the SCDHS aware of his attendance of this program and failed to obtain the trial court's or the SCDHS' approval of the program. Further, we note that the Choices program was added to Higgenbottom's case plan due to a history of domestic violence and family history of violence within his family. At the time of the proceedings, Higgenbottom had recently been charged with domestic violence, committed against his sister. While the record is unclear as to the outcome of circumstances of that incident, testimony showed that he blamed others for his actions. The SCDHS social worker assigned to the case, Fein, testified that Higgenbottom had been verbally abusive towards her and left threatening phone messages on her home answering machine. Further, Higgenbottom threatened to drive by Fein's home. Higgenbottom did complete the Goodwill Parenting classes as outlined in the case plan. However, Higgenbottom received only a Certificate of Participation. Testimony showed that Higgenbottom was not open or honest at the classes and rarely participated without prompting. Higgenbottom's attendance was not consistent. He had three excused absences, three unexcused absences and was tardy 11 times. The third and last goal of the case plan, called for Higgenbottom to obtain and maintain housing. The record demonstrates that Higgenbottom has not maintained stable housing. On May 25, 1999, Higgenbottom testified he was living with his mother in Akron, Ohio. On June 7, 1999, Higgenbottom was living in Biloxi, Mississippi, with his fiancé. Higgenbottom testified that previously he had lived with a girlfriend. That arrangement ended when he was incarcerated for domestic violence. Aside from Higgenbottom's lack of compliance and commitment to the goals of the case plan, testimony showed that Deshone Denny always cried when she was taken to visits with Higgenbottom. During these visits, there was little interaction between Higgenbottom and Deshone. Higgenbottom admitted that Deshone probably did not know him. The record reflects that Higgenbottom did not take advantage of several opportunities to visit with Deshone. The record clearly and convincingly showed that Higgenbottom failed to follow his case plan. Further, despite anger management and parenting classes, Higgenbottom continued to have difficulties parenting his daughter and continued to have anger management problems and domestic violence problems. Deshone had no interaction with Higgenbottom at visits. The evidence showed that Higgenbottom had not bonded with his daughter and was traumatized over contact with Higgenbottom. Therefore, we find the trial court's finding that the child could or should not be placed with either parent, was supported by competent, credible evidence and is not against the manifest weight of the evidence. As to whether the grant of permanent custody was in the best interest of the child, R.C. 2151.414 provides, in relevant part: (D) . . . [t]he court shall consider all relevant factors, including, but not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
A best interests hearing took place on August 17, 1999. Fein testified that Deshone was a 2 year old child, with no physical, mental or emotional problems. Deshone has been placed in a foster home and has been there since the age of five months. The foster family was interested in adopting Deshone. Deshone had not seen her mother since April, 1998 and, at the time of the hearing, Higgenbottom had not visited Deshone since April 22, 1999. While Higgenbottom had the opportunity to visit since that date, he had not taken advantage of the opportunities. Fein testified that homestudies had been done on various relatives of Deshone, but no suitable home was home was found for Deshone based upon information supplied by the Summit County Children Protective Services on those relatives investigated. We find the trial court's finding that it was in the child's best interest to award permanent custody to the Stark County Department of Human Services was supported by competent, credible evidence and was not against the manifest weight of the evidence. There was clear and convincing evidence that granting permanent custody to the SCDHS was in Deshone's best interest. There was no significant bonding with either parent and a legally secure permanent placement with others cannot be achieved without a grant of permanent custody to the SCDHS. Therefore, we find that the grant of permanent custody to SCDHS was supported by competent, credible evidence and was not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.
The Judgment of the Stark County Court of Common Pleas is affirmed.
 ______________________ Edwards, J.
By Farmer, P.J. and Wise, concurs.